IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CV-381-D(3)

| | |
|---|---|
| DARRICK E. BROWN,<br>　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the Court upon the parties' cross-motions for Judgment on the Pleadings **[DE's 11-12 & 16-17]**. The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB").

**Statement of the Case**

Plaintiff applied for DIB on March 31, 2003 alleging that he became disabled on July 31, 2001 (Tr. 14). After his claims were denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* Following a hearing, the ALJ issued an unfavorable decision on May 27, 2005, in which he determined that Plaintiff was not disabled during the relevant time frame. *Id.* at 14-22. The Social Security

1

Administration's Office of Hearings and Appeals denied Plaintiff's request for review, making the ALJ's May 27, 2005 determination Defendant's final decision. *Id.* at 5-7. The instant action was filed by Plaintiff on September 25, 2006 **[DE-1]**.

## Standard of Review

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was

2

applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## **Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f). Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment (Tr. 15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) chronic obstructive pulmonary disease ("COPD"); 2) coronary artery disease; 3) hypertension; 4) gouty arthritis; and 5) alcohol dependence. *Id.* at 16. In completing step three, however, the ALJ determined that these impairments, either singly or in combination, were not severe enough to meet or medically equal any listed impairment. *Id.*

The ALJ then proceeded with step four of his analysis and determined that Plaintiff

3

retained the residual functional capacity ("RFC") to perform a significant range of light work. *Id.* at 19. Based on this finding, the ALJ found that Plaintiff could not perform any of his past relevant work. *Id.* at 21. Finally, at step five the ALJ concluded that there were a significant number of jobs in the national economy that Plaintiff could perform *Id.* at 20. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time pertinent to his decision. *Id.* In making these determinations the ALJ cited substantial evidence, a summary of which now follows.

In 1993, Plaintiff underwent stent placement surgery after suffering a myocardial infarction. *Id.* at 198. A cardiac catheterization on April 20, 1995 showed normal coronary arteries with preserved left ventricular function and normal right and left heart pressures. *Id.* at 272. Dr. Xiao Yan Qian reported on October 10, 2001 that Plaintiff's artery disease was asymptomatic. *Id.* at 236. The ALJ noted that on examinations, Plaintiff's heart has consistently had a regular rate and rhythm with no murmur, gallops or rubs. *Id.* at 16, 211-213, 230-241. On February 11, 2002 Plaintiff informed Dr. Qian that he felt okay and that he played basketball and walked daily. *Id.* at 234.

On March 9, 2002, Plaintiff was examined by Dr. Craig Soltis for his complaints of a severe cough and shortness of breath. *Id.* at 131. A chest x-ray indicated that Plaintiff had COPD and a small infiltrate in his right lung base. *Id.* at 131-132. Plaintiff was given a single Albuterol/Atrovent nebulizer, which caused him to show much improved breath sounds along with a rise in his peak flow. *Id.* at 131-132. A second nebulizer treatment was offered but declined by Plaintiff. *Id.* at 132. Finally, Plaintiff was strongly encouraged to

quit smoking. *Id.*

Plaintiff was examined by Dr. Thomas Knutson on April 22, 2002. *Id.* at 133. At that time, Plaintiff's lungs were clear with equal breath sounds. *Id.* Dr. Knutson noted that Plaintiff had no rales, rhonchi or wheezing. *Id.* An x-ray performed on October 8, 2002 showed no evidence of active cardiopulmonary disease. *Id.* at 142.

Dr. Gonzalo Fernandez examined Plaintiff in May, 2003. *Id.* at 165-168. Plaintiff's lungs were clear to auscultation with no rales, wheezes or rhonchi. *Id.* at 167. The ALJ observed that Plaintiff has not complained of further problems with his COPD since this examination. *Id.* at 16. Furthermore, Plaintiff appeared well-developed, well-nourished, and in no acute distress. *Id.* at 166. He was able to walk down the hall, get on and off the examination table, and sit comfortably during the exam. *Id.* Plaintiff stated he could: 1) walk two to three hundred yards; 2) stand for one hour; and 3) pick up 50 to 60 pounds; 4) cook; 5) make his bed; and 6) complete various household chores. *Id.* at 165-166. He had a vesicular rash which was excoriated along his forearms and arms, as well as a hyperpigmented flat rash along his anterior thighs and buttocks. *Id.* at 167. However, there was no cyanosis or edema of his extremities. *Id.* Plaintiff had full motor strength in his extremities and good grip strength bilaterally. *Id.* His muscle bulk and tone were both good. *Id.* Dr. Fernandez noted that Plaintiff had no paravertebral muscle spasm, tenderness, crepitus, effusion or deformities. *Id.* In addition, Plaintiff had full range of motion in his neck, shoulders, elbows, forearms, hips, back, knees, ankles, wrists and fingers. *Id.* Ultimately, Dr. Fernandez determined that Plaintiff: 1) was able to stand and walk six hours

in an eight hour workday (limited by his foot pain); 2) was able to sit for eight hours in an eight hour workday (with normal breaks); 3) does not need an assistive device; and 4) could lift or carry 10 to 20 pounds frequently and 50 pounds occasionally. *Id.* No postural or manipulative limitations were noted. *Id.* The only other limitation noted by Dr. Fernandez was that Plaintiff was to avoid direct sunlight which might exacerbate his skin rash. *Id.*

Plaintiff has hypertension with recorded blood pressure readings as high as 196/114 in September 2001. *Id.* at 127. However, when Plaintiff's blood pressure was elevated at 153/108 in July, 2001, Dr. Qian indicated Plaintiff had not been taking his blood pressure medicine and was medically noncompliant. *Id.* at 239. Dr. Qian later reported that Plaintiff's blood pressure had dropped from 188/109 to 151/97 after taking medication for only three days. *Id.* at 238. From February 2002 to March 2003, Plaintiff's blood pressure was measured at or near normal limits. *Id.* at 131, 133, 223-235. In November 2003, Plaintiff's blood pressure was markedly elevated at 208/117, however, Dr. Qian noted that Plaintiff had not taken his medication that morning. *Id.* at 212. After taking his medications and a dose of clonidine Plaintiff's blood pressure normalized. *Id.* Likewise, his blood pressure continued to be well controlled according to measurements from November, 2003 to November, 2004. *Id.* at 207-213, 312.

Dr. Judith Hodgkins, a podiatrist, reported in July and November 2003 that Plaintiff had painful keratoses on the plantar aspect of both feet, which were treated with debridement. *Id.* at 191-193. Surgery was not recommended, but Plaintiff was instructed to return as needed for debridement to maintain a pain-free lifestyle. *Id.* On October 10, 2001, Dr. Qian

6

noted that Plaintiff suffered from an episode of gout. *Id.* at 235-236. Dr. Qian observed on March 16, 2003, that Plaintiff was not taking any over-the-counter medication for his foot pain. *Id.* at 224. Later, Dr. Qian opined that Plaintiff's foot pain was caused by "flat feet" and observed that Plaintiff had been regularly seeing a podiatrist. *Id.* at 220. He also noted that Plaintiff required shoe inserts and support stockings refills. *Id.*

Plaintiff's medical record was reviewed by Dr. Margaret Parrish, and on May 13, 2003 she assessed his RFC. *Id.* at 169-176. Dr. Parrish determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk for a total of about 6 hours in an 8-hour workday; 4) sit for a total of 6 hours in an 8-hour workday; and 5) push and/or pull with no limitations other than as shown for lifting and carrying. *Id.* at 170. No postural, manipulative, visual or communicative limitations were noted. *Id.* at 171-173. The only environmental limitation noted by Dr. Parrish was that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. *Id.* at 173.

On November 24, 2003, Plaintiff was treated for gouty arthritis. *Id.* at 213-215. Plaintiff complained of pain and swelling of the knuckles in his right hand and in his right wrist. *Id.* at 212-215. Medication was prescribed and Plaintiff was referred to a provider for follow-up. *Id.* at 215. Plaintiff was ultimately diagnosed with peripheral vascular disease with claudication. *Id.* at 208, 337. The ALJ noted that this diagnosis was not made until months after the date Plaintiff was last insured for disability benefits–March 31, 2004. *Id.* at 17.

7

Plaintiff underwent a psychological evaluation conducted by Dr. Tom Chapman on July 5, 2004. *Id.* at 194-195. Dr. Chapman diagnosed Plaintiff as suffering from severe depression and panic attacks. *Id.* at 195. He also stated that Plaintiff's Global Assessment of Functioning was only 35-40, which is indicative of some impairment in reality testing. *Id.* However, Dr. Chapman also noted that Plaintiff was fully oriented and had intact memory. *Id.* at 194. Ultimately, Dr. Chapman opined that Plaintiff "does not have the ability to handle the stressors of either part or full time employment." *Id.* at 195. The ALJ noted that the remainder of the record shows no evidence that the Plaintiff complained of depression or received mental health treatment for that condition. *Id.* at 17. Furthermore, the ALJ made the following observations with regard to Dr. Chapman's findings:

> Dr. Chapman's diagnosis of depression was made on the basis of one exam only and is not support by any other medical evidence in the record. His GAF rating is not supported by any specific clinical findings from his exam. The undersigned finds insufficient basis in the record for concluding that the [Plaintiff] has any significant functional limitations from a "severe" affective disorder.
> *Id.* at 18.

Moreover, Dr. Susan Steven also conducted a psychiatric review of Plaintiff on June 16, 2003. *Id.* at 177-190. Dr. Steven concluded that Plaintiff did not have a medically determinable mental impairment. *Id.* at 177.

Treatment records show that Plaintiff received therapy for alcohol dependance from July 2002 to January 2003, after being released from prison for driving while intoxicated. *Id.* at 148-168. Plaintiff testified during the hearing in this matter that he does not have a

8

driver's license because of this offense. *Id.* at 365. He also testified that he attends Alcoholics Anonymous meetings three times a week. *Id.* With regard to Plaintiff's substance abuse, the ALJ noted the following:

> Although . . . the [Plaintiff] has a history of alcohol abuse and dependence which could have contributed to depressive symptoms, he testified at the hearing that he stopped drinking in April 2002 after being released from prison. Given that testimony, the undersigned is unable to conclude that the [Plaintiff] is disabled from substance abuse.
> *Id*. at 18.

The ALJ also made the following observations with regard to the credibility of Plaintiff's testimony:

> [T]he [Plaintiff's] subjective complaints concerning his symptoms and limitations are not fully credible. As previously noted, he has a history of smoking despite COPD, alcohol abuse, and noncompliance with medication. He told Dr. Fernandez in May 2003 that he was able to cook, make his bed, do the laundry, vacuum, mop, and wash dishes [ *Id.* at 165-168]. Dr. Qian noted in February 2002 that the [Plaintiff] felt okay and was playing basketball and walking daily. James Lassiter, a mental social worker, reported in September 2002 that the [Plaintiff] enjoyed playing basketball, working at lawn services, and warehouse duties [ *Id.* at 196-301]. Such activities are not consistent with the [Plaintiff's] allegations of debilitating symptoms.
>  *Id.* at 18.

Based on this record, the ALJ made the following determinations about Plaintiff's disabilities in addition to those already noted:

> The above-summarized evidence shows no evidence of COPD after the [Plaintiff's] chest x-ray and treatment for a right lung infiltrate in early 2002, when the [Plaintiff] was still smoking. The [Plaintiff's] coronary artery disease was described as asymptomatic in October 2001 and there is no evidence to the contrary thereafter with his heart consistently having a regular rate and rhythm with no murmur, gallops or rubs. His blood pressure is apparently well controlled as long as he takes his medication as prescribed and there is no evidence of significant end-organ damage secondary to this

9

> condition. Despite the [Plaintiff's] episodic flare-ups of gout, examinations have consistently shown full ranges of motion of his joints and extremities with no significant swelling or deformity of the joints. As previously noted, he was not diagnosed with peripheral vascular disease until several months after his date last insured.
> *Id.* at 18.

Accordingly, the ALJ concluded that Plaintiff retained the RFC to perform a significant range of light work during the relevant time frame. *Id.* at 18-19.

Finally, a vocational expert ("VE") testified at the administrative hearing. *Id*. at 378-388. The VE opined that Plaintiff was not capable of performing his past relevant work. *Id*. at 381-383. However, the VE testified that a person of Plaintiff's RFC, age, education and work experience could perform the occupations of general clerk, administrative clerk, and material clerk. *Id*. at 383-385. Each of these jobs exist in significant numbers in the national economy. *Id*.

Based on the forgoing record, the Court hereby finds that there was substantial evidence to support the ALJ's conclusions. Although Plaintiff lists several assignments of error, each assignment essentially contends that the ALJ improperly weighed the evidence before him. Specifically, Plaintiff's arguments consists primarily of highlighting evidence the ALJ allegedly "failed" to consider. However, the record clearly reflects that the ALJ did consider the evidence highlighted by Plaintiff. Moreover, this Court must uphold Defendant's factual findings if they are supported by substantial evidence. The role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is

10

what Plaintiff requests this Court to do, his entire claim is meritless. Nonetheless, the Court will now briefly address portions of Plaintiff's argument.

## I. The ALJ did not fail to properly evaluate the evidence

Plaintiff makes several allegations, all of which essentially allege that the ALJ failed to properly evaluate the evidence of record, particularly the medical evidence. It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245 (Slip Op. at 8)(W.D.Va. 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." Id. (internal citations omitted).

While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (per curiam). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an

11

ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209 (4th Cir.1999) (unpublished opinion)(internal citations omitted).

After reviewing the ALJ's opinion and the underlying record, the undersigned finds that substantial evidence supports each of the ALJ's findings. Furthermore, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence.

## II. Plaintiff's subjective complaints were properly considered

Plaintiff assigns error to the ALJ's determination regarding the credibility of Plaintiff's testimony. The ALJ's findings with regard to Plaintiff's subjective complaints have already been summarized. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The ALJ's findings of fact demonstrate that gave proper weight to all of Plaintiff's limitations and impairments, including pain, in assessing Plaintiff's credibility (Tr. 14-22). Likewise, the ALJ's citations to Plaintiff's medical records, as outlined *supra.*, constitute substantial evidence which support this assessment.

12

## Conclusion

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-12]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-16]** be GRANTED, and the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 6th day of July, 2007.

_____
William A. Webb
U.S. Magistrate Judge

13

Case 5:06-cv-00381-D   Document 24   Filed 07/06/07   Page 13 of 13